May it please the Court, I'm Thomas Hester for Petitioner Repellent, Hal Elkins. Hal Elkins received a 13-year plea offer, 10 of those for murdering his girlfriend. 13 days before that offer expired, the Oregon Supreme Court decided State v. Morgan, a case which increased Mr. Elkins' maximum sentence for murder to 25 years from a guideline sentence of 121 months. Trial counsel was unaware of the Morgan decision and never discussed it with Mr. Elkins. That is when justice rolled off the rails in this case. We're kind of getting educated in Oregon sentencing law every time we come up here. Would you just clarify one thing as you begin? Judge, I cannot hear you. I cannot hear either of the judges when they speak. All right. What was the maximum sentence that Elkins could have received on all three convictions together before State v. Morgan and then after State v. Morgan? The plea offer itself only had dealt with two that would be a charge dismissed, but there is an issue about whether there could be an upward departure sentence, which, if there could be, would double, particularly on the murder case, it would double any sentence, but any guideline sentence, potentially. On the murder case, it could double that, so from 121 months to 242, rather than 300 under Morgan, just focusing on the murder case itself. And then when you add it with the other cases or the other charges? The other charge, he could have gotten 36 months as a guideline sentence on the attempted murder. That could have doubled. And there was a 50-month gun minimum that basically, I think, assumed on the assault warrant charge, but he got five years or 60 months there. And I'm not sure how the gun minimum played into place. That was the five-year gun minimum. It could have been slightly lower. I do have a guideline grid, but if I may, that is really not a significant issue here. But it's an issue I'd like to know the answer to, as I consider it. I believe that's the answer. If you want me to grab the guideline grid, I can tell you on the charge that was dismissed, would have been dismissed under the agreement, which was that third charge I referenced, the assault warrant. Okay. But let me go ahead now, I guess, and say to you why I believe that's totally non-issue. The briefing addresses why there were no applicable grounds for departure, and I won't reiterate that because had there been grounds for departure on, again, just focusing on the murder case, then that potential for an upward departure eviscerated the upside potential of the trial because at trial, Mr. Elkins went to trial presenting an extreme emotional disturbance defense, an affirmative defense. He admitted the murder but said it's excused or it's diminished to a manslaughter by virtue of extreme emotional disturbance and affirmative defense under Oregon law. The jury was charged if you find him guilty, even the jury instructions, and I believe that's it. If you're referring to the excerpt of record, you'll find those at 800-805 of the excerpt. If he won a trial, then the murder would be manslaughter. The guideline sentence would reduce from 120 months to 60 months. Were there a basis for departure, an upward departure on the manslaughter gets him back to 120 months and he wins absolutely nothing for having gone to trial, and in fact he has the potential for getting the additional five years or perhaps more on the charge that would have been dismissed. What do you do with the statement to counsel that he never would have pled guilty, period? I think Mr. Elkins wins on counsel's affidavit. Counsel says there was never any serious discussion of a plea because he said, I won't plead guilty, I was stressed out, I was under extreme emotional disturbance. That, I think it's kind of analogous to ineffectiveness cases where there's a failure to investigate. You can't make a decision without doing the work of having the information first. You can't make a tactical decision not to investigate. You make a tactical decision not to present a defense. This is a case where he never, ever disputed shooting and killing his girlfriend. Indeed, immediately after the crime, driving from the crime scene, he called her mother and said, I killed Kathy and I wanted you to hear it from me first. He then was pulled over. He goes to the police officer. He walks back, puts his hands behind his back. He says, call Kathy's mother. Kathy's the girl I just shot at the prime rib restaurant. The gun's in the car. This is an occasion where he was claiming, as many, many criminal defendants do at an initial stage with clients anyhow, I didn't do this. I'm not guilty. I'm not going to trial. That's different from, he's saying, the record shows that he said he was not going to plead guilty to murder. He pleaded guilty to manslaughter, which means he shot her just as you said, that he killed her just as you said. But he didn't say, he said he wouldn't plead guilty to murder. Well, Your Honor, I mean, we'll take that. That is a fact we'll accept. However, the standard here is a reasonable probability that the results would have been different when we're talking about prejudice, something that undermines confidence in the conviction. Again, he's, as a legal matter of trial, before he gets to the affirmative defense, he has to admit the crime. So, I mean, it is somewhat of a semantic argument we're having now, and, you know, that's valid. But when you consider the fact that there was no upside to this trial, if they're right about an upward departure, and a very small one, if, as I believe, there couldn't have been, but after Morgan, there is a huge downside. Well, the upside to the trial was he was intent on this emotional distress defense, and if he won, the upside would be he would be acquitted. No, he wouldn't be an acquittal. He would be convicted of manslaughter. Right. He would be convicted of manslaughter, but not murder. And he would be convicted of presumably attempted murder. It is not a defense to the attempted murder of the man that was with her. So, I mean, yes, there was an upside of what the conviction would have been. In terms of sentencing, the maximum upside could have been five years of prison time. Not inconsequential at all. But he ends up getting 20 years more than the plea offer said. And counsel is quite clear also. I never discussed the Morgan case with him. Counsel is pretty clear I didn't know about it. I mean, the record shows he didn't know about it until sentencing. In terms of the district court's opinion, I guess I'd like to make two points. One, I don't believe there's anything to defer to in the state post-conviction court because that court, very minimal findings, primarily written by the state, but taking those again, accepting those as the findings, says counsel explained the sentencing ramifications to the petitioner. That is unreasonably wrong on our facts. As the district court goes on to say, well, there was an extra 58 months, the district court says that's not so egregious as to render counsel's advice ineffective. That's wrong. That's wrong under Padilla. It's wrong under Glover. It's wrong under Strickland. And then the district court also sort of tied its opinion on this upward departure possibility. But as I said, that is really legally wrong because that same upward departure possibility eviscerated the potential gain of the trial. I think I will reserve my remaining two minutes for rebuttal. All right. May it please the Court, I think it's helpful to walk through a little bit of the timeline. You're Ms. Wells, are you? Yes, I am, sir. As this case evolved and what was going on with sentencing guidelines in Oregon at that time, the guidelines had been implemented in 1989. And shortly, in 1992, the Oregon Court of Appeals decided State v. Morgan, which held that the statute in Oregon that prescribed a mandatory minimum 10-year sentence for murder was superseded by the guidelines. And so in this case, when the State extended a plea offer to the petitioner of what was essentially a guidelines sentence, the State believed and everyone believed that ORS 163.115, which was the murder sentencing statute, had been superseded by the guidelines. That plea offer that was made on June 8 expired by its terms on June 30th. At some point, the record is not clear whether the petitioner formally rejected that plea offer or whether he simply didn't accept it and it expired by its terms at the end of June. On, back up, at the time the plea offer was received, trial counsel's affidavit states that the issue about what rules applied to sentencing for murder was up in the air, which was correct. Morgan was on review to the Oregon Supreme Court at that time. The State post-conviction court found that trial counsel discussed with petitioner the sentencing ramifications pre-Supreme Court Morgan, including consecutive sentences and departure sentences. And to address, Judge McCown, your question about how that would work in Oregon, there were four charges, but two were assaults pled under different theories that would merge, so you had three. The murder sentence, the presumptive sentence under the guidelines was 120 months. The attempted murder count, the presumptive sentence, was 36 months. The merged assaults, the presumptive sentence, was 60 months because of a firearm enhancement that was provided by statute at that time. All three of those sentences could, under Oregon law, be imposed consecutive to each other, which is, in fact, what happened. And the total would then have been, if they had been imposed consecutively? If they had been imposed consecutively, that would be 210-plus months. Then in addition to the consecutive sentences, Oregon law also allows the trial court to impose an upward departure if it makes certain findings about why a departure would be appropriate. And one thing that I want to correct what Mr. Hester said, he talked about the potential for doubling a departure, what Oregon calls a 200 percent rule. And another sort of strange wrinkle in this case is that at the time that this plea offer was on the table, that 200 percent rule did not apply to convictions for murder. So in other words, at this time, the trial court could have, as an upward departure, imposed a life sentence for murder if it had chosen to do so under the guidelines. And then that rule was subsequently repealed, so now we're all within that 200 percent rule. But that was not true in 1993 at the time that this plea offer was being discussed. So all that said, we know that at some point this plea offer was either rejected or simply not applicable. Accepted, but in terms of counsel's deficient performance, what we know from the post-conviction court's findings was that Petitioner was advised at the time of the plea offer of what the ramifications were of taking the case to trial, that he was not ever told, as he said in his deposition, that all he would get was the presumptive guidelines sentence. And in essence, what happened, although trial counsel acknowledged that he was unaware of the Supreme Court decision in 1993, he was not told that he would get the presumptive guidelines sentence. And that's what we know from the post-conviction court's findings. Are you saying that Morgan didn't make any difference? I'm saying that Morgan didn't make any difference to what the Petitioner's sentencing exposure was, because whether he was aware of the presumptive guidelines sentence or not, he was not told that he would get the presumptive guidelines sentence. So what are the differences? First of all, it seems to me that when you have a case comes down that changes the sentencing landscape, that if a lawyer doesn't tell a client about that, why isn't that just straight up ineffective assistance of counsel? Be the side, not the prejudice, but just the failure to advise. I think it turns on the timing, because what trial counsel said in his affidavit happened in this case was that the plea offer was discussed, Petitioner said, I'm never going to plead guilty to murder, so I'm not going to accept this plea offer, and so that was the end of the discussion. And so that discharged the lawyer. I mean, clients say all kinds of things. That would then discharge the lawyer from telling the client about what the law, that they're going to see change in Oregon law, just because the client said once he didn't want to plead guilty? I would agree that it would have been preferable if trial counsel in this case had come back to Petitioner and said, this case has been decided, should we go back to the State, see if we can, you know, reopen this offer, see if we can do something because of this? Well, there's no suggestion at that point it's been withdrawn, has it? The plea offer, all we know is that it expired by its terms on June 30th. And Oregon came down on what date? The 17th of June. So 15 or 13 days before, we have a new case, the offer is not expired. That's correct. And what we don't know. And we have a lawyer who either doesn't know about it, apparently, but in any event, he doesn't tell his client about it. I mean, that, you don't get that confluence of circumstances too often. And so the State's position is that's not ineffective assistance because the guy already said he wouldn't plead guilty, or what would be the rationale in your view? The State's position is that it isn't ineffective assistance because the advice that Petitioner was given with respect to the case was accurate in terms of the time that the Petitioner was looking at, regardless of what the basis might be. But I thought that would be, I add all that up, it's about 18 years. So 18 years versus 33, it's a big enough difference? It would be 18 years, more or less, if you're looking simply at the three guideline sentences being imposed consecutively that doesn't take into consideration the possibility of an upward durational departure, which the trial court could also have done under the guidelines and could have imposed, in fact, at that time, a life sentence on the murder conviction. But ultimately, I think what this case turns on is the prejudice prong of Strickland and the Petitioner's statement that the Petitioner would never offer because he would never plead guilty to murder because he did not believe, although he admitted killing his girlfriend, did not believe that he intended to do so because of his mental state at the time. I would just like to very quickly talk about the two departure grounds that were mentioned in the PSR and at the sentencing. Defense counsel was adamant they didn't apply. Those departure grounds were a vulnerable victim, which under Oregon law is someone who's infirm, who has mental disabilities, who is sick, something like that. This woman was not a vulnerable victim, and you can see that in the sentencing letter from defense counsel. It wasn't a serious issue. The second was permanent injury. A homicide always entails permanent injury. That is not a basis for departure there. Let me focus on prejudice, and I want to just briefly, I filed a 28-J letter talking about Padilla yesterday. On March 31st of this year, the Supreme Court reiterated, talking about sort of advice, misadvice, a holding limited to affirmative misadvice by counsel would invite two absurd results. First, it would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available. Silence under these circumstances would be fundamentally at odds with the critical obligation of counsel to advise the client of the advantages and disadvantages of a plea agreement. The second reason the Court goes on to speak of in Padilla is the circumstances in that case, Mexican national deportation consequences, and it says that that is quintessentially the duty of counsel to provide her client with available advice about the consequences of a plea. So assuming that it's ineffective assistance and then you go to the prejudice, in a way it boils down to the statement about, I wouldn't have fled guilty. And I want to speak about... Would you focus on that? Yes. Mr. Elkins is a 40-year-old man. He's served in the Marines. He's worked all his life. He's never been arrested before this. He has shot and killed his girlfriend. There's not much doubt he was estranged. Her mother's testimony at trial is pretty strong on that. He was also intoxicated. He may or may not have been going to commit suicide. He, as much as Mr. Padilla needed the guiding hand of counsel, and counsel says, he said, you know, I was distraught, extreme emotional defense applies, and we never seriously discussed the plea offer. That is, I mean, it would make no sense to, if he were properly advised, to take this offer. It would be blatantly irrational. And while he was irrational and distraught when he shot her, in the months that followed, that irrationality is not characteristic, and it didn't follow through in the rest of his life prior to this. So I would urge the court that this should be granted, and that that will get justice back on track. There's a quick issue about remedy the State mentions in their response brief, and I mentioned in my reply, and I think we're actually both wrong as I reflect on it. I say specific performance, and I agree with that. I think the remedy here is to get him back to the status of a post ante, I think, before the problem, when he would have accepted the plea. However, it wasn't a contract plea. It wasn't binding on the court, and therefore, my argument that he should be ordered released immediately is wrong. It should be remanded for the plea and sentencing in State court. Thank you. Thank you. Thank you both for your arguments. Elkins v. Bellick is submitted. The next case for argument is Davenport v. Bellick. If you could stay here, Ms. Bellick. Is Bellick how the superintendent pronounces it, or? Bellack.
judges: Hall, Thompson, McKeown